UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MONICA M. SIMMONS                                       CIVIL ACTION

VERSUS                                                         NO. 23-2129

SERENITY OUTREACH CENTER,                      SECTION "R" (5)
LLC

## ORDER AND REASONS

Before the Court is defendant's motion to dismiss for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).[1] Plaintiff opposes the motion.[2] Also before the Court is plaintiff's unopposed motion to continue the motion to dismiss.[3] For the following reasons, the Court denies defendant's motion to dismiss, and denies plaintiff's motion to continue as moot.

## I.    BACKGROUND

This case arises out of an employment dispute.   Plaintiff Monica Simmons, who has paraplegia and requires the use of a wheelchair, applied

---

[1]    R. Doc. 10.
[2]    R. Doc. 18.
[3]    R. Doc. 14.

to work for defendant Serenity Outreach Center, L.L.C. ("Serenity") in 2022.[4]
An administrator for Serenity conducted a virtual interview with Simmons
and offered Simmons a position as a social worker.[5]   Simmons visited
Serenity's office the following day to complete her employment application
and other onboarding materials.  Simmons was accompanied by her nurse,
who was there to assist Simmons in filling out the employment paperwork.[6]
According to Serenity, this was the first time that it became aware of
Simmons' disability.[7]

   After Simmons and her nurse left the office, Simmons received a phone
call from the Serenity administrator who conducted her interview asking
how Simmons would be able to perform her job responsibilities while using
a wheelchair, including entering and exiting client residences.[8]   Simmons
allegedly explained that she had previously been employed as a social worker
for another company for four years and had no difficulties in performing her
job while using a wheelchair.[9]   According to Serenity, Simmons also
indicated that her personal nurse drove her to and from client appointments

---

[4]     R. Doc. 1 ¶¶ 7-8, 19, 29.
[5]     *Id.* ¶¶ 20-22.
[6]     *Id.* ¶¶ 23-24.
[7]     R. Doc. 10-1 at 1.
[8]     R. Doc. 1 ¶ 25; R. Doc. 10-1 at 1.
[9]     R. Doc. 1 ¶ 25.

for her former employer, and that she provided services from the back of her handicap van while the nurse waited outside.[10]  Following this conversation, Serenity withdrew its employment offer to Simmons.[11]  Thereafter, Simmons filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging violations of the Americans with Disabilities Act ("ADA") by Serenity.[12]  Serenity submitted a request to the EEOC to dismiss Simmons' charge and, on April 20, 2023, the EEOC issued a notice of right to sue to Simmons.[13]

Simmons then filed this action against Serenity, alleging violations of the ADA and Title I of the Civil Rights Act of 1991.[14]  Simmons invokes this Court's federal-question jurisdiction over her claims under 28 U.S.C. §§ 1331 and 1343.  In her complaint, Simmons contends that Serenity discriminated against her because of her disability by engaging in prohibited conduct, including: (1) taking an adverse employment action against her when it refused to hire her, or fired her; (2) failing to engage in an interactive process; and (3) denying her employment opportunities for which she was

---

[10]    R. Doc. 10-1 at 1.
[11]    Doc. 1 ¶ 26; R. Doc. 10-1 at 1.
[12]    *Id.* ¶ 28.
[13]    *Id.* ¶¶ 15-16.
[14]    *See generally id.*

qualified, with or without reasonable accommodations.[15]   She seeks injunctive and declaratory relief, damages, and attorneys' fees and costs.

Serenity now moves to dismiss Simmons' claims for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).[16] Serenity specifically raises three challenges to the Court's jurisdiction, arguing that under Title I of the ADA: (1) Serenity was not a "covered entity" because it does not employ the threshold number of employees; (2) Simmons was not a prospective "employee" of Serenity but rather a prospective independent contractor; and (3) Simmons was not a "qualified individual" because she could not independently perform the job for which she was offered.[17]

On September 20, 2023, Simmons filed a motion to defer consideration of the motion to dismiss, in which she contends that Serenity's motion should be construed as a motion for summary judgment.[18] Simmons argues that Serenity's motion challenges the merits of her ADA claim, not the

---

[15]   *Id.* ¶ 30.

[16]   R. Doc. 10.

[17]   R. Doc. 10-1.  Serenity attaches to its motion additional documents, including: Simmons' employment application with Serenity; Simmons' W-9 form; Simmons' signed employee attestation statement, in which she indicates that she is "[c]apable of performing essential functions of job with or without accommodation;" a notice of unemployment claim filed with the Louisiana Workforce Commission; and an employee termination letter presumably from Simmons' previous employer.  R. Docs. 10-2 & 10-3.

[18]   R. Doc. 14.

subject-matter jurisdiction of the Court, and thus is not appropriate for consideration under Rule 12(b)(1).[19]  The Court, in considering Simmons' concurrently filed motion to expedite hearing on her motion to defer consideration,[20] issued a Briefing Order limiting its consideration of the motion to dismiss to the issue of whether it was properly brought as a jurisdictional motion under Rule 12(b)(1).[21]  Thus, any concerns raised by Simmons in her motion to defer are moot, as the Court declines to construe Serenity's motion as a motion for summary judgment.  Simmons' motion is therefore denied as moot.

The Court further ordered that the parties submit memoranda narrowly addressing whether Serenity's motion to dismiss is properly brought under Rule 12(b)(1).[22]  Accordingly, Simmons filed a memorandum in which she argues that a determination of whether Serenity qualifies as a "covered entity" and whether she qualifies as a prospective "employee" under the ADA requires intensive factual assessments that cannot be resolved at

---

[19]   R. Doc. 14-1.  Simmons further argues that because Serenity attached materials to its motion that may not be considered on a motion to dismiss and the motion relies on facts and arguments outside of the complaint, it is more appropriately considered at the summary-judgment stage.  *Id.*

[20]   R. Doc. 15.

[21]   R. Doc. 16.

[22]   *Id.*

the pleading stage.[23]  Simmons also argues that Serenity's third ground for dismissal relating to her status as a "qualified individual" is a substantive attack on an element of her claim, not a jurisdictional issue.[24]   In its memorandum, Serenity contends that the motion is properly brought under Rule 12(b)(1) because Simmons' complaint is insubstantial and frivolous, and she has failed to plead facts establishing subject-matter jurisdiction.

The Court considers the parties' arguments below.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) requires dismissal of an action if the court lacks jurisdiction over the subject matter of the plaintiff's claim. Motions submitted under Rule 12(b)(1) allow a party to challenge the court's subject-matter jurisdiction based upon the allegations on the face of the complaint. *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996).  In ruling on a Rule 12(b)(1) motion to dismiss, the court may rely on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by the undisputed facts plus the court's resolution of disputed facts."  *Moore v.*

---

[23]    R. Doc. 18.
[24]    *Id.*

6

*Bryant*, 853 F.3d 245, 248 (5th Cir. 2017) (quoting *Barrera-Montenegro*, 74 F.3d at 659).  The plaintiff bears the burden of demonstrating that subject-matter jurisdiction exists.  *See Spokeo v. Robins*, 578 U.S. 330, 338 (2016).

The basic statutory grants of federal court subject-matter jurisdiction are contained in 28 U.S.C. §§ 1331 and 1332.  "Federal question" jurisdiction is invoked when a plaintiff properly pleads a claim arising under the Constitution or the laws of the United States.  *See Bell v. Hood*, 327 U.S. 678, 681-85 (1946).  "[S]ubject-matter jurisdiction, because it involves the court's power to hear a case, can never be forfeited or waived."  *United States v. Cotton*, 535 U.S. 625, 630 (2002).  Courts are obligated to determine independently whether subject-matter jurisdiction exists.  *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999).

A defendant may raise objections to a court's subject-matter jurisdiction at any time.  *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011).  In determining whether a defendant's objections are properly brought under Rule 12(b)(1), a court must examine whether they are "jurisdictional" in nature, or instead go to an essential element of the plaintiff's statutory claim for relief.  *See id.* at 434-35; *Minard v. ITC Deltacom Commc'ns, Inc.*, 447 F.3d 352, 355 (5th Cir. 2006).  The Supreme Court has urged that a statutory requirement "should not be referred to as

jurisdictional unless it governs a court's adjudicatory capacity, that is, its subject-matter or personal jurisdiction." *Henderson*, 562 U.S. at 435 (citations omitted). "Other rules, even if important and mandatory, . . . should not be given the jurisdictional brand." *Id.* (citing *Union Pac. R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment*, 558 U.S. 67, 81 (2009)). This includes rules establishing a plaintiff's "statutory standing," which determine whether a plaintiff "falls within the class of plaintiffs whom Congress has authorized to sue under" a particular statute. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014). Statutory standing challenges do "not implicate subject-matter jurisdiction, *i.e.*, the court's statutory or constitutional *power* to adjudicate the case." *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 642-43 (2002) (citation and internal quotation marks omitted); *accord Lexmark*, 572 U.S. at 128 n.4. Instead, statutory standing is an element of a plaintiff's claim. *Beatriz Ball, L.L.C. v. Barbagallo Co.*, 40 F.4th 308, 316 n.6 (5th Cir. 2022) (per curiam); *see also HCB Fin. Corp. v. McPherson*, 8 F.4th 335, 339 (5th Cir. 2021) (holding a motion to dismiss for lack of statutory standing is not analyzed under Rule 12(b)(1)).

## III.   DISCUSSION

Title I of the ADA contains provisions governing the conduct of covered employers in relation to their current and prospective employees.  42 U.S.C. §§ 12111-12117.  Title I's anti-discrimination provision, codified at 42 U.S.C. § 12112(a), provides that "[n]o **covered entity** shall discriminate against a **qualified individual** on the basis of disability in regard to job application procedures[] [or] the hiring . . . of **employees**."  *Id.* § 12112(a) (emphasis added).  In its motion, Serenity contends that Simmons' ADA claim must be dismissed for lack of subject-matter jurisdiction because it is not a "covered entity," and Simmons is neither an "employee" nor a "qualified individual."

The Court will address each of Serenity's stated grounds for dismissal to determine whether they pertain to jurisdictional requirements or go to the elements of Simmons' ADA claim.

### A.   Covered Entity

The ADA defines a "covered entity" as an "employer, employment agency, labor organization, or joint labor-management committee."  42 U.S.C. § 12111(2).  The Act further defines an "employer" as "a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or

preceding calendar year, and any agent of such person." *Id.* § 12111(5)(A). Serenity contends that it is not a covered entity within the meaning of the ADA because it employs less than ten full-time staff members.[25] The rest of Serenity's workforce is allegedly composed of independent contractor social workers who deliver counseling services to Serenity's clients.[26]

The issue here is whether the ADA's employee-numerosity requirement is a jurisdictional prerequisite examined under Rule 12(b)(1). The Court finds that it is not. As an initial matter, Serenity has not cited to any authority to support its claim that the requirement is jurisdictional and that Simmons' complaint should be dismissed for lack of jurisdiction on this ground. Moreover, several courts that have considered this question have determined that the ADA's employee-numerosity requirement is nonjurisdictional and is instead a substantive element of a plaintiff's statutory claim. These decisions are based on the Supreme Court's decision in *Arbaugh v. Y & H Corporation*, 546 U.S. 500 (2006). In that case, the Court addressed an analogous employee-numerosity requirement under Title VII of the Civil Rights Act of 1964. As with the ADA, Title VII "limit[s] the definition of "'employer' to include only those having 'fifteen or more

---

[25]   R. Doc. 10-1 at 6-7.
[26]   *Id.* at 7.

employees.'"  *Id.* at 503 (quoting 42 U.S.C. § 2000e(b)).  The Court recognized the dangers in "conflat[ing]" the question of "[s]ubject matter jurisdiction in federal-question cases" with a "merits-related determination" and cautioned against "drive-by jurisdictional rulings."  *Id.* at 511 (citations omitted).  Observing that nothing in the text of Title VII indicates that the employee-numerosity requirement was meant to be jurisdictional, the Court held that "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character."  *Id.* at 516.  Applying this "readily administrable bright line" to the case, the Court concluded that "the threshold number of employees for application of Title VII is an element of a plaintiff's claim for relief, not a jurisdictional issue."  *Id.*

Since *Arbaugh*, several courts have applied its reasoning to the ADA's numerical employee threshold and held that the requirement is a substantive element of a plaintiff's ADA claim, not a jurisdictional prerequisite.  *See, e.g.*, *Reynolds v. Am. Nat. Red Cross*, 701 F.3d 143, 155 (4th Cir. 2012) ("Thus, *Arbaugh* dictates that the ADA's employee threshold is not a limit on jurisdiction but, rather, an element of the claim itself."); *Bittle-Lindsey v. Seegars Fence Co.*, No. 21-1044, 2022 WL 1566770, at *1 (4th Cir. May 18, 2022) (citing *Reynolds* for same proposition); *Stanley v. RBO Custom Home*

*Builders, LLC*, No. 06-5887, 2006 WL 3366134, at *1-2 (E.D. La. Nov. 20, 2006) (holding that under *Arbaugh*, ADA's employee numerosity requirement does not speak to the court's subject-matter jurisdiction but is an element of the claim); *French v. Ulayyet*, No. 10-CV-2359, 2011 WL 13394695, at *1-2 (N.D. Tex. Apr. 14, 2011) (same); *Coder v. Medicus Labs., L.L.C.*, No. 14-cv-7, 2014 WL 2984052, at *2 (E.D. Tex. July 2, 2014) (same). *See also Minard*, 447 F.3d at 357 n.29 (holding that the threshold number of employees is an element of a plaintiff's claim for relief under the FMLA and acknowledging, in dictum, the same requirement under the ADA). Consistent with these authorities, the Court likewise holds that the ADA's employee numerosity requirement is nonjurisdictional.

## B.    Employee Status

Serenity asserts that the Court lacks subject-matter jurisdiction because Simmons was interviewed and offered a position to be an independent contractor.  Serenity thus contends that Simmons does not qualify as an "employee" under the ADA.

The ADA's protections afforded to employees and prospective employees do not extend to independent contractors.  *See Silguero v. CSL Plasma, Inc.*, 907 F.3d 323, 331 (5th Cir. 2018) ("[C]ourts have often

determined that . . . independent contractors are not protected by Title I of the ADA." (citations omitted)); *Flynn v. Distinctive Home Care, Inc.*, 812 F.3d 422, 427 (5th Cir. 2016) (collecting persuasive authority that independent contractors are not covered by Title I of the ADA).   In determining whether a plaintiff qualifies as an employee rather than an independent contractor, the actual text of the ADA offers little instruction. The Act defines an "employee" as "an individual employed by an employer." 42 U.S.C. § 12111(4).   As the Supreme Court has recognized, this "nominal definition" is "completely circular and explains nothing."   *Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440, 444 (2003) (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322 (1992) (internal quotation marks omitted)).   To "fill the gap in the statutory text," *id.*, the Fifth Circuit has established a "hybrid economic realities/common law control test" to determine whether an employee-employer relationship exists.   *Burton*, 798 F.3d at 227 (quoting *Deal v. State Farm Cnty. Mut. Ins. Co. of Tex.*, 5 F.3d 117, 118-19 (5th Cir. 1993) (internal quotation marks omitted)); *accord Juino v. Livingston Parish Fire Dist. No. 5*, 717 F.3d 431, 433 (5th Cir. 2013).

Under the economic-realities portion of the test, courts ask "whether putative employees, 'as a matter of economic reality, are dependent upon the

business to which they render service.'" *Juino*, 717 F.3d at 434 (quoting *Diggs v. Harris Hosp.-Methodist, Inc.*, 847 F.2d 270, 272 n.3 (5th Cir. 1988)).  This inquiry focuses on "whether the alleged employer paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment." *Deal*, 5 F.3d at 119.  "The common law control portion of the test, which courts should emphasize over the economic realities portion, assesses 'the extent to which the one for whom the work is being done has the right to control the details and means by which the work is to be performed.'" *Juino*, 717 F.3d at 434 (quoting *Diggs*, 847 F.2d at 272); *see also Deal*, 5 F.3d at 119 ("The right to control an employee's conduct is the most important component of this test.").

Determining whether Simmons qualifies as an "employee" or "independent contractor" is not a jurisdictional inquiry.  Rather, this highly fact-specific determination goes to the merits of Simmons' ADA claim. Indeed, the Fifth Circuit has impliedly recognized that the economic realities/common law control test relates to the merits of a plaintiff's statutory claim, not the court's subject-matter jurisdiction.  *See Juino*, 717 F.3d at 433 & n.1 (holding that district court erred in treating motion for partial summary judgment as a 12(b)(1) motion to dismiss, and reviewing "on the merits" plaintiff's Title VII claim, which district court "prudently

14

analyzed . . . under this circuit's 'economic realities/common law control test' . . . [to] resolv[e] the employee-independent contractor conundrum"). Further, the Supreme Court's "bright line" rule in *Arbaugh* is instructive. The ADA's broad definition of an employee is found in a separate part of the statute labeled "Definitions."  42 U.S.C. § 12111.  Like Title VII in *Arbaugh*, nothing in the text of the ADA's definition section "clearly states" that the employee requirement "shall count as jurisdictional."  *See* 546 U.S. at 515.  It "does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district court."  *Minard*, 447 F.3d at 356 (holding that FMLA definitions section is nonjurisdictional).  In such situations, *Arbaugh* instructs that "courts should treat the restriction as nonjurisdictional in character." *Arbaugh*, 546 U.S. at 516.  Therefore, the Court concludes that a determination of whether Simmons is an employee or independent contractor does not affect federal-court subject-matter jurisdiction but, instead, "delineates a substantive ingredient" of her ADA claim for relief. *Arbaugh*, 546 U.S. at 503.

Moreover, a number of district courts following *Arbaugh* have held that the employee/independent contractor inquiry is nonjurisdictional.  *See, e.g.*, *Watson v. Blaze Media L.L.C.*, No. 23-CV-0279, 2023 WL 5004144, at *4 (N.D. Tex. Aug. 3, 2023) (holding that defendant's objection to plaintiff's

standing to sue on grounds that plaintiff was independent contractor pertained to statutory standing, and thus was not a challenge to a jurisdictional requirement under Title VII, but to an element of the claim); *Carter v. H2R Rest. Holdings, L.L.C.*, No. 16-cv-1554, 2017 WL 4174805, at *8-9 (same); *McGinnis v. Se. Anesthesia Assocs., P.A.*, 161 F.R.D. 41, 44 (W.D.N.C. 1995) (same); *Schalk v. Associated Anesthesiology Prac.*, 316 F. Supp. 2d 244, 249 (D. Md. 2004) (holding same in ADA context); *Hopkins v. Cornerstone Am.*, 512 F. Supp. 2d 672, 678-81 (N.D. Tex. 2007), *vacated in part on other grounds by Hopkins v. Cornerstone Am.*, 545 F.3d 338 (5th Cir. 2008) (applying *Arbaugh* to conclude that "the employee/independent contractor determination does not affect the Court's subject-matter jurisdiction, but instead, delineates a 'substantive ingredient' of Plaintiffs' FLSA claims").  Based on this analysis and case law, the Court will treat the "employee" restriction as nonjurisdictional in character.

### C.    Qualified Individual

A plaintiff asserting a claim under Title I of the ADA "bears the burden of proving that she is a 'qualified individual with a disability'—that is, a person 'who, with or without reasonable accommodation, can perform the essential functions' of her job."  *Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526

U.S. 795, 806 (1999) (quoting 42 U.S.C. § 12111(8)).  Serenity contends that Simmons has not met this burden, and therefore the Court lacks subject-matter jurisdiction to adjudicate her claim.[27]  While Serenity does not dispute that Simmons has a disability under the ADA, it contests Simmons' qualification for the job, arguing that she was unable to perform the essential functions of the position, with or without reasonable accommodations.[28]

The Fifth Circuit has recognized that a plaintiff's status as a "qualified individual" under the ADA is an essential element of her claim.  *See E.E.O.C. v. LHC Group, Inc.*, 773 F.3d 688, 697 (5th Cir. 2014) ("To establish a prima facie discrimination claim under the ADA, a plaintiff must prove . . . that [s]he was qualified for the job." (citation and internal quotation marks omitted)); *Moss v. Harris Cnty. Constable Precinct One*, 851 F.3d 413, 417 (5th Cir. 2017) (same).  But this element is not a jurisdictional requirement, and a dismissal on the grounds that the plaintiff is not a "qualified individual" relates to the merits of the plaintiff's ADA claim, not to whether the Court has subject-matter jurisdiction.  *See Moss*, 851 F.3d at 417-18 (affirming district court's grant of summary judgment dismissing Title I ADA claim when plaintiff failed to establish that he was qualified for the job at the

---

[27]    R. Doc. 10-1 at 7-8.
[28]    R. Doc. 10-1 at 7-8.

time of his termination); *Minard*, 447 F.3d at 353 (reversing district court dismissal for lack of subject-matter jurisdiction when basis for dismissal related to element of plaintiff's statutory claim, "not a limit upon the federal-court's subject-matter jurisdiction").  Accordingly, Serenity's challenge to Simmons' job qualifications does not implicate this Court's subject-matter jurisdiction, and is not properly addressed under Rule 12(b)(1).

In sum, the Court finds that each of Serenity's objections raised in its motion to dismiss are nonjurisdictional, and therefore are not properly asserted under Rule 12(b)(1).  As Serenity's objections relate to the substantive adequacy of Simmons' ADA claim, these objections must be raised in a motion challenging the merits of her claim.  *See Bell*, 327 U.S. at 682.

## IV.   CONCLUSION

For the foregoing reasons, the Court DENIES defendant's motion to dismiss for lack of subject-matter jurisdiction, and DENIES plaintiff's motion to continue as moot.

New Orleans, Louisiana, this   13th   day of November, 2023.

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

18